UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WHITNEY DESIGN, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellant, | ) | Case No. 4:10-cv-441 CEJ |
| | ) | |
| v. | ) | |
| | ) | |
| WHITNEY DESIGN, INC., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

**APPELLANT UNITED STATES OF AMERICA'S RESPONSE TO APPELLEE
WHITNEY DESIGN, INC.'S MOTION TO DISMISS APPEAL**

Appellant United States of America, on behalf of the Department of Commerce ("Commerce") and the Department of Homeland Security, U.S. Customs and Border Protection ("Customs"), hereby responds to Appellee Whitney Design, Inc.'s ("Whitney") Motion to Dismiss Appeal (Docket No. 3) and the Memorandum in Support thereof ("Mem.") (Docket No. 4), both filed March 17, 2010.

ARGUMENT

I.   The United States Has Properly Appealed the Sale Order Under the Applicable Rules

Whitney asserts that the United States has appealed only the Bankruptcy Court's Order

Denying Oral Motion Pursuant to Federal Rule of Bankruptcy Procedure 8005 for Stay of the Effectiveness of Order Granting the Amended Motion to Sell, Pending Its Appeal (the "Stay Denial Order") and not the Bankruptcy Court's Order Granting Amended Motion to Sell (the "Sale Order"). Mem. 3.[1]  That is incorrect.

Admittedly, the United States' Notice of Appeal, Docket No. 1 at 1, cited and attached only the Stay Denial Order.  Nevertheless, the United States' intent to appeal the Sale Order was objectively manifest for several reasons.

1.    The United States sought a stay pending appeal at the conclusion of the bankruptcy court hearing on Whitney's sale motion.  *Id.*, Attach. 1 at 1 (Stay Denial Order citing the United States' oral motion for a stay pending appeal).  Why would the government seek a stay pending appeal if it did not intend to appeal the Sale Order?

2.    The United States' Statement of Issues to Be Presented on Appeal ("Statement of Issues") raised both broad and discreet challenges to the Sale Order and was not limited to issues regarding the Stay Denial Order. *Id.*, Attach. 7 at 1 (stating, for example, "[w]hether the Bankruptcy Court erred in granting the Amended Motion to Sell").

3.    The United States' Designation of Items for Inclusion in the Record on Appeal ("Designation") was also broad, encompassing items that evidenced its intent to challenge the Sale Order (designating, for example, the Sale Motion (and its amendments), the Sale Order, and declarations filed in support of the Sale Motion). *Id.*, Attach. 6 at 2-6.

4.    The District Court Civil Cover Sheet accompanying the Notice of Appeal cited 28

---

[1]    The Sale Order, the Memorandum Opinion in support thereof, and the Stay Denial Order are attached as Exhibits 2, 3, and 4, respectively, to Whitney's Memorandum.

-2-

U.S.C.§ 158(a) as the statue under which the United States was filing. *Id.*, Attach. 4 at 1. That section applies only to final orders, such as the Sale Order, and not to interlocutory orders, 28 U.S.C. § 158(a)(3), such as the Stay Denial Order, unless leave to appeal is obtained, which did not occur here.

5. The United States timely filed its Notice of Appeal on February 11, 2010, after Whitney closed the sale transaction on January 29, 2010, the same afternoon the Bankruptcy Court entered the Sale Order. Mem. 3. How could the United States' appeal the Stay Denial Order when the act for which it was seeking a stay, the closing of the sale, had already occurred? The United States intended to appeal the Sale Order and not the Stay Denial Order, since winning reversal of the former is the only mechanism for gaining it effective relief.[2]

Moreover, Whitney does not, and cannot, claim prejudice from the Notice of Appeal's failure to designate the Sale Order. First, even though it knew the United States might appeal the Sale Order, it nevertheless closed on the sale transaction within hours of that order's entry. Permitting the United States to pursue an appeal of the Sale Order, therefore, does not prevent Whitney from acting on the relief it obtained from the Bankruptcy Court – it has already acted. Second, because no merits briefing has yet occurred, Whitney will have a full opportunity to address the merits of the United States' challenge to the Sale Order. Third, the Stay Denial Order (i) referenced the Sale

---

[2] The United States' Notice of Appeal was timely filed within fourteen days of entry of both the Sale Order and Stay Denial Order. Fed. R. Bankr. P. 8002(a). After the expiration of that period, the United States could not amend or file another notice of appeal to specifically designate the Sale Order without a court ordered extension of time. The Bankruptcy Rules, however, expressly barred the Bankruptcy Court from granting such an extension for the Sale Order, Fed. R. Bankr. P. 8002(c)(1)(B) (barring appeal period extensions for orders approving sales of property under 11 U.S.C. § 363), which is why the United States did not seek such relief before the Bankruptcy Court.

Order, (ii) fully incorporated the Bankruptcy Court's findings of fact set forth in its Memorandum Opinion in support of the Sale Order and (iii) addressed the merits of an appeal of the Sale Order. Docket No. 1, Attach. 1 at 1-2, 4-7.  Thus, Whitney knew, as soon as the United States filed its Notice of Appeal, that it would have to defend the findings and conclusions underpinning the Sale Order.

Given these circumstances, the Notice of Appeal is sufficient under the applicable rules for a valid appeal of the Sale Order.  Two procedural rules are potentially applicable – Rule 8001(a) of the Federal Rules of Bankruptcy Procedure or Rule 3(c) of the Federal Rules of Appellate Procedure. Courts are divided on which rule applies to appeals from bankruptcy court orders, and it appears the Eighth Circuit has not addressed the issue.[3]  Under either rule, however, the United States has properly appealed the Sale Order.

A.  Bankruptcy Rule 8001(a)

Bankruptcy Rule 8001(a) governs the contents of a notice of appeal and states:

> The notice of appeal shall (1) conform substantially to the appropriate Official Form, (2) contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, telephone numbers of their respective attorneys, and be accompanied by the prescribed fee.

Fed. R. Bankr. P. 8001(a).  Rule 8001(a)'s express terms, therefore, do not even require the notice of appeal designate the order appealed from, and failure to do so is <u>not</u> a jurisdictional bar to review.

---

[3] *Compare Fadayiro v. Ameriquest Mortgage Co.*, 371 F.3d 920, 921 (7th Cir. 2004); *United States v. Arkison* (*In re Cascade Roads, Inc.*), 34 F.3d 756, 761 (9th Cir. 1994); *Citizens Bank & Trust Co. v. Case* (*In re Case*), 937 F.2d 1014, 1021 (5th Cir.1991) (all applying Rule 8001(a)) *with Air Line Pilots Ass'n v. Continental Airlines* (*In re Continental Airlines*), 125 F.3d 120, 128-29 (3d Cir. 1997) (applying Rule 3(c) to notice of appeal from bankruptcy decision).

*In re Cascade Roads, Inc.*, 34 F.3d at 761; *see also Fadayiro*, 371 F.3d at 922; *Zuppardo v. Oscher (In re J.H. Inv. Servs., Inc.)*, 418 B.R. 413, 420 (M.D. Fla. 2009); *Hounsom v. U.S.*, 325 B.R. 319, 323 (M.D. Fla. 2005); *Nicola v. Piscitelli*, 2001 WL 34371704 *2 (E.D. Pa. 2001); *White v. U.S. (In re White)*, 183 B.R. 356, 357 (D. Conn. 1995). Other than failing to specifically designate the Sale Order in the Notice of Appeal itself, Whitney does not, and cannot, claim that the Notice of Appeal failed to comply with Rule 8001(a). And, while the Notice of Appeal designated only the Stay Denial Order, that order specifically mentioned the Sale Order and incorporated the findings of fact from the Sale Order's supporting memorandum opinion. In effect, the order designated in the Notice of Appeal itself designated the Sale Order bringing the notice in compliance with Rule 8001(a) for an appeal of the Sale Order. Accordingly, the United States has properly appealed the Sale Order under Rule 8001(a).

   B. Rule 3(c) of the Federal Rules of Appellate Procedure

Under Rule 3(c) of the Federal Rules of Appellate Procedure, the result is the same. Unlike Rule 8001(a), Rule 3(c) requires appellants to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c). Hence, it is a stricter rule than Rule 8001(a), but even then, courts apply "a policy of liberal construction of notices of an appeal in situations where intent is apparent and there is no prejudice to the adverse party," *Hawkins v. City of Farmington*, 189 F.3d 695, 704 (8th Cir. 1999) (quoting *McAninch v. Traders Nat'l Bank of Kansas City*, 779 F.2d 466, 467 n.2 (8th Cir. 1985)).

Courts have consistently applied this policy in allowing appeals of orders not expressly mentioned in the notice of appeal, and particularly where the order that was not mentioned was entered prior to, or contemporaneously with, the order properly designated in the notice of appeal.

*Hawkins*, 189 F.3d at 704; *McAninch*, 779 F.2d at 467 n.2; *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1260 (11th Cir. 2006); *see also Foman v. Davis*, 371 U.S. 178, 181 (1962) (holding that notice of appeal designating post-judgment motion could be treated as appeal from final judgment where intention is sufficiently manifest and appellee is not misled).  Courts have also looked at the case's procedural history and the parties' statement of issues on appeal and designation of record in holding there was an intent to appeal.  *Hawkins*, 189 F.3d at 704; *McAninch*, 779 F.2d at 467 n.2

Here, similar to the facts in *Hawkins* and *McAninch*, the Sale Order, the Stay Denial Order and the Memorandum Opinion were all entered contemporaneously, and the Stay Denial Order referenced the Sale Order and incorporated the findings of the Memorandum Opinion.  Moreover, the United States indicated an intent to appeal by seeking a stay of the Sale Order, which was then further evidenced in its Statement of Issues and Designation, as noted above.  And, as noted above, Whitney can claim no prejudice from the Sale Order not being mentioned.  Thus, even under the stricter Rule 3(c), the United States properly appealed the Sale Order.

II.   The United States' Appeal Is Not Moot

   A.   Constitutional Mootness Is Inapplicable to an Appeal of the Sale Order

Citing Article III of the U.S. Constitution, Whitney claims the United States' appeal of the Stay Denial Order is moot because an actual case or controversy no longer exists. Mem. 4.  Because Whitney immediately closed on the sale after the Sale Order's entry, the United States agrees; however, as explained above, the United States has properly appealed the Sale Order and that appeal is certainly <u>not</u> moot.

"Article III of the Constitution only allows federal courts to adjudicate actual, ongoing cases

or controversies." *Potter v. Norwest Mtg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003) (citations omitted). "The case or controversy requirement ensures that 'self-interested parties vigorously advocating opposing positions' present issues 'in a concrete factual setting.'" *Potter*, 329 F.3d at 611. Moreover, "the conditions under which a suit will be found constitutionally moot are stringent." *Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491 (10th Cir. 1993). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Powell v. McCormack,* 395 U.S. 486, 496 (1969), and only if it is impossible to grant any effectual relief even if it only partially redresses the appellant's grievances, *Church of Scientology v. U.S.*, 506 U.S. 9, 12 (1992) (stating also that an appeal is not to be dismissed merely because a court cannot restore the parties to the *status quo ante).* Finally, the party asserting mootness bears the burden of demonstrating that there is no effective relief the court can provide. *Suter v. Goedert*, 504 F.3d 982, 988 (9th Cir. 2007); *Riverview Trenton R.R. V. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 945-46 (6th Cir. 2007).

     Here, Whitney has not met its burden, and the doctrine does not apply to the Untied States' appeal of the Sale Order. First, there is a "concrete factual setting" in which Whitney and the United States are "vigorously advocating opposing positions," and second, this Court can fashion some form of relief. For example, this Court could reverse the Sale Order in full or reverse only those portions of the Sale Order that permitted the transfer of the assets free and clear of the United States' claims and interests, thereby allowing the United States to seek recovery from the purchaser of Whitney's assets. *See, e.g.*, *Search Market Direct, Inc. v. Jubber* (*In re Paige*), 584 F3d 1327, 1336 (10th Cir. 2009) (reversing district court order dismissing as moot appeal of bankruptcy court's order confirming a chapter 11 plan); *Clear Channel Outdoor, Inc. v. Knupfer* (*In re PW, LLC*), 391 B.R.

25, 33 (B.A.P. 9th Cir. 2008) (holding appeal of order approving sale under 11 U.S.C. § 363 was not constitutionally moot because appeal panel could reverse all or only part of the sale order). Accordingly, the United States' appeal of the Sale Order is not constitutionally moot.

    B.    Statutory Mootness Under Section 363(m) Is Inapplicable

Whitney also contends that our appeal is nevertheless moot relying on cases citing 11 U.S.C. § 363(m), and the United States' failure to obtain a stay pending appeal. Mem. at 4-5.[4] That section generally operates to "protect[] the reasonable expectations of *good faith third-party purchasers* by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale." *Official Comm. of Unsecured Creditors v. Trism, Inc.* (*In re Trism, Inc.*), 328 F.3d 1003, 1006 (8th Cir. 2003) (emphasis added).

That section does not apply here, however, due to the good faith purchaser exception within in its own terms. Section 363(m) reads:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization *to an entity that purchased or leased such property in good faith*, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m) (emphasis added). Thus, courts have held that regardless of whether an appellant obtains a stay pending appeal of a sale order under section 363, a purchaser's good faith remains a viable issue on appeal. *See, e.g.*, *Made In Detroit, Inc. v. Official Comm. of Unsecured Creditors* (*In re Made In Detroit, Inc.*), 414 F.3d 576, 581 (6th Cir. 2005); *Licensing by Paolo, Inc.*

---

[4] The United States did not fail to seek a stay – it requested one, but the Bankruptcy Court denied it. Within hours of that denial and the Bankruptcy Court's contemporaneous entry of the Sale Order (on a Friday afternoon), Whitney closed the sale transaction. Hence, the United States simply had no chance to seek a stay in this Court before the transaction closed.

*v. Sinatra* (*In re Gucci*), 126 F.3d 380, 387 (2d Cir. 1997); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).  Here, the United States objected to the good faith of the purchaser of Whitney's assets, Household Essentials, LLC ("Household Essentials"), before the Bankruptcy Court, Joint Record on Appeal ("R.") at 000293-312,[5] and preserved it on appeal before this Court in its Statement of Issues, Docket No. 1, Attach. 7 at 2 ("Whether Household Essentials, LLC was a good faith purchaser under 11 U.S.C. § 363(m)").

Under section 363(m), "[t]he relevant test is twofold:  a good faith purchaser is one who buys [1] in good faith and [2] for value."  *Badami v. Burgess* (*In re Burgess*), 246 B.R. 352, 355-56 (B.A.P. 8th Cir. 2000).  Neither requirement is satisfied here.

       1.       Household Essentials Lacked Good Faith

"[T]he requisite misconduct necessary to establish a lack of good faith involves 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders,'" *id*. at 356 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)), and encompasses conduct in the course of the sale proceedings, *In re Rock Indus. Mach. Corp.*, 572 F.2d at 1198.

Good faith is lacking "[w]here it is evident from the loan agreement itself that the transaction has an intended effect that is improper under the Bankruptcy Code."  *In re EDC Holding Co.*, 676 F.2d 945, 948 (7th Cir. 1982) (applying the analogous good faith standard in section 364(e) of the Bankruptcy Code for a lender's postpetition lending to a debtor).[6]  To find good faith lacking in such

---

[5] Citations to the record on appeal are to the Joint Record on Appeal as assembled and filed in this case at Docket No. 7 ("Notice of Filing of Joint Record on Appeal").

[6] Section 364(e) is the analog to section 363(m).  *Unsecured Creds. Comm. Mobil Oil*
(continued...)

a case is unremarkable since:

> "[Bankruptcy courts are] duty bound to take all reasonable steps to prevent a debtor from abusing or manipulating the bankruptcy process to undermine the essential purposes of the Bankruptcy Code, including the principle that all the debtor's assets are to be gathered and deployed in a bona fide effort to satisfy valid claims.

*Marrama v. Citizens Bank of Massachusetts* (*In re Marrama*), 430 F.3d 474, 477 (1st Cir. 2005), *aff'd*, 549 U.S. 365 (2007).  Good faith is lacking here, because Household Essentials' purchase violated express provisions of the Bankruptcy Code.

First, the sale's terms violated section 363(k).  That section states:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise *the holder of such claim may bid at such sale*, and, if the holder of such claim purchases such property, *such holder may offset such claim against the purchase price of such property*.

11 U.S.C. § 363(k) (emphasis added).  The effect of this provision is to permit a secured creditor of a debtor to bid its debt in lieu of cash when the debtor seeks to sell assets that are subject to the secured creditor's lien.

Section 363(k) of the Bankruptcy Code is clear – it permits "only those persons with a valid security interest in property to be sold to claim a setoff."  *Bank of Nova Scotia v. St. Croix Hotel Corp.* (*In re St. Croix Hotel Corp.*), 44 B.R. 277, 279 (Bankr. D.V.I. 1984).  Accordingly, "while a

---

[6](...continued)
*Corp. v. First Nat'lBank & Trust Co. of Escanaba* (*In re Ellingsen MacLean Oil Co.*), 65 B.R. 358, 361 (W.D. Mich. 1986) (citing H.R No. 595, 95th Cong., 1st Sess. 346-347; S. Rep. No. 989, 95th Cong., 2d Sess. 57-58 (1978)), *aff'd*, 834 F.2d 599 (6th Cir. 1987)..

secured creditor may setoff its allowed secured claims against the purchase price of a property of estate to be sold by the [t]rustee pursuant to § 363(k), there is no comparable provision which would permit unsecured creditors to offset their claims." *In re Moritz*, 162 B.R. 618, 618 (Bankr. M.D. Fla. 1994).

Here, Households Essentials was not the holder of any type of claim let alone an allowed secured claim as section 363(k) explicitly requires. Rather, Household Essentials held only a proxy to exercise the credit bid rights of Whitney's secured creditors, Enterprise Bank & Trust Company ("Enterprise") and Eagle Fund I, L.P. ("Eagle"), R. at 000411-12 (Credit Bid Agreement at 4-5, para. 4). As a proxy, Household Essentials was merely "[o]ne who is authorized to act as a substitute for another," *Black's Law Dictionary* (8th ed. 2004). Enterprise and Eagle Fund did not assign, transfer or convey their secured claims against Whitney to Household Essentials. Rather, they expressly agreed not to sell those claims, R. at 000412 (Credit Bid Agreement at 5, para. 5), and in fact, retained their liens against the assets after the transfer to Household Essentials, *id*. (Credit Bid Agreement at 5, para. 4(c)). For purposes of section 363(k), they remained the holders of allowed secured claims against property of Whitney's bankruptcy estate. As such, they were the only entities entitled to exercise credit bid rights under section 363(k), and yet, they clearly never did because the amount of their claims was never reduced, i.e., "offset", by the value of Whitney's assets. Instead, their secured claims continue to encumber Whitney's assets now transferred to Household Essentials. By the express language of section 363(k), Household Essentials could not credit bid.[7]

---

[7] Contrary to the Bankruptcy Court's holding, R. at 000761-62, Rule 9010 of the Bankruptcy Rules, dealing with notices of appearance and powers of attorney, does not bless this violation of section 363 for three reasons. First, the secured creditors were not exercising their credit bidding rights by proxy for the obvious reason that they did not end up owing Whitney's
(continued...)

Second, as discussed below, the sale violated bedrock principles under section 363(b) of the Bankruptcy Code. Given the unprecedented relief the Bankruptcy Court granted, this Court must reach the central issue of whether section 363(b) authorized this sale, and courts have so held in refusing to apply statutory mootness. *Shapiro v. Saybrook Mfr. Co.*(*In re Saybrook Mfr. Co.*), 963 F.2d 1490, 1493 (11th Cir. 1992 ("We cannot determine if ths appeal is moot under section 364(e) until we decide the central issue in this appeal – whether cross-collateralization is authorized under section 364.").

Here, the Bankruptcy Court authorized a sale of Whitney's assets:

(i) to a company Whitney's insiders control, R. at 000758-59;

(ii) to a company formed for the sole purpose of escaping liability on federal antidumping duties owed to Customs, *id*. at 000605-06, 000758, 000771;

(iii) that generated no cash consideration for Whitney's estate, *id*. at 000777 ("[T]he sale will not inject cash into [Whitney's] estate.") ; and

(iv) benefitted only Whitney's principals and its secured creditors, *id*. at 000779 ("The DOC will not be treated any differently than any other unsecured creditor as a result of the sale. None will

---

[7](...continued)
assets – Household Essentials did. Second, Rule 9010 cannot authorize credit bidding by proxy in violation of section 363, because the bankruptcy rules cannot "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075; *Dove-Nation v. eCast Settlement Corp.*, 318 B.R. 147, 151 (B.A.P. 8th Cir. 2004) ("The rules are designed to supplement the statute not replace it."). Finally, even if Rule 9010 authorized credit bidding by proxy, the parties here did not comply with the its requirements to use a power of attorney to do so. Fed. R. Bankr. P. 9010(c) (requiring an executed power of attorney for a proxy to represent a creditor); *Catanzaro v. Alvaro* (*In re Alvaro*), 2005 WL 3789132 *6 (Bankr. S.D.N.Y. 2005) ("The use of the word 'shall' in the rule makes the production of the power of attorney mandatory."); *In re Aspen Marine Group, Inc.*, 189 B.R. 859, 862 (Bankr. S.D. Fla. 1995) (holding that a proxy under Rule 9010 "must be in the form of a power of attorney").

receive any proceeds.").

The Bankruptcy Court acknowledged all of this in its Memorandum Opinion.  Yet neither it nor the parties cited a decision authorizing a sale under similar circumstances.  As noted in the United States' objection in the Bankruptcy Court, *id*. at 000293-312, the Bankruptcy Code prohibits the relief Household Essentials obtained here under sections 363(b) and (k), and for that reason it did not purchase in good faith because it knowingly entered into a transaction not authorized by law.  That issue this Court must address on its merits and not dismiss under section 363(m).

2.      Household Essentials Did Not Purchase for Value

As for paying value, "[t]he relevant standard is whether the purchaser *paid* value." *In re Burgess*, 246 B.R. at 356 (emphasis added), and courts have traditionally held that fair value "is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets," *In re Abbots Dairies of Pa.*, 788 F.2d at 149 (quoting *In re Rock Indus. Mac. Corp.*, 572 F.2d at 1197 n.1); *see also First State Operating Co. v. Holbrook* (*In re Lotspeich*), 328 B.R. 209, 218 (B.A.P. 10th Cir. 2005) ("[V]alue . . . is defined as at least 75% of the appraised value of the assets.").  Household Essentials did not pay value here.

Indeed, Household Essentials paid <u>nothing</u> to Whitney.  As explained above, it simply bid the amount of the secured debt owed by Whitney to someone else, i.e., Whitney's secured creditors.  That is not paying value.  In contrast, the purchaser in *In re Burgess* "delivered $30,000 [cash] to the Trustee to purchase the [property]." *id*.

Because Household Essentials paid nothing, it certainly did not pay at least 75% of the appraised value of Whitney's assets.  No appraisal of Whitney's assets was introduced at the Bankruptcy Court with which to create the 75% benchmark.  The only alleged evidence of value was

the non-expert testimony of Whitney's Chief Sales Officer, R. 000782-83 at 32, who, according to Whitney, "was called to offer testimony regarding his role in the bidding and sale process," *id.* at 000783, and could not even state the exact amount of the credit bid Household Essentials submitted, *id.* at 000588-89.  Hence, no independent testimony supports an appraisal of Whitney's assets, and the 75% benchmark has not been met.

    C.  Even if Applicable, Section 363(m) Does Not Moot the Entire Appeal

  Even if section 363(m) applies and the good faith exception to it does not, the provision would still not moot <u>all</u> of the United States' challenges to the Sale Order.  "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters.,Inc.*, 489 U.S. 235, 241 (1989)).  The plain language of section 363(m) is limited to "authorization[s] *under subsection (b) or (c) of this section*."  11 U.S.C. § 363(m) (emphasis added).  Using plain language, Congress limited application of section 363(m) to sale orders authorized by sections 363(b) and (c) and did not extend the provision to apply to section 363(f) sales.  "Section 363(m) thus cleaves a distinction between authorizations to 'use, sell or lease . . . property of the estate' as set forth in § 363(b) and authorizations under § 363(f) to 'sell property under subsection (b) or (c) of this section free and clear of any interest in such property . . . .'" *In re PW, LLC*, 391 B.R. at 35.  Accordingly, by definition, Congress limited the subsection's protection to the sale itself, as opposed to the other terms of a sale order. Congress drew a bright-line "distinction between the authorization of a sale and the terms under which the sale is to be made," *id.* at 35, and "intended that section 363(m) address only changes of title or other essential attributes of a sale . . . ." and that "terms of those sales, including the 'free and clear' term at issue here, are not protected" by section 363(m), *id.* at 35-36.  *Contra Official Comm. of Unsecured Creditors v.*

*Anderson Senior Living Property, LLC* (*In re Nashville Senior Living, LLC*), 407 B.R. 222, 230-31 (B.A.P. 6th Cir. 2009).

Here, the United States is challenging discreet and specific terms of the sale and not just the sale itself. Specifically, the United States challenges whether (1) it was entitled to adequate protection under 11 U.S.C. § 363(e) and, if so, did Whitney provide such protection, and (2) section 363(f) permitted the sale of Whitney's assets free and clear of the United States' claims and interests. Docket No. 1, Attach. 7 at 2. Accordingly, section 363(m) does not moot all of the United States' challenges to the Sale Order, and the appeal should proceed on the merits. *In re PW, LLC*, 391 B.R. at 36.

## CONCLUSION

For all the foregoing reasons, this Court should deny Whitney's Motion to Dismiss Appeal. This 24th day of March 2010.

    Respectfully submitted,

    TONY WEST
    Assistant Attorney General

    RICHARD G. CALLAHAN
    United States Attorney

    WESLEY WEDEMEYER
    Assistant United States Attorney
    Thomas Eagleton U.S. Courthouse
    111 S. 10th Street, 20th Floor
    St. Louis, MO 63102
    (314) 539-3900
    (314) 539-2309 (f)

//s// *Matthew J. Troy*
J. CHRISTOPHER KOHN
TRACY J. WHITAKER
MATTHEW J. TROY
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
(202) 514-9038
(202) 307-0494 (f)

Attorneys for Appellant United States of America

### CERTIFICATE OF SERVICE

      I hereby certify that on this 24${}^{th}$ day of March 2010 a copy of the foregoing Response to Appellee Whitney Design, Inc.'s Motion to Dismiss was filed electronically with the Clerk of the Court, and served electronically upon participants in the Court's CM/ECF system.

                                                       *//s// Matthew J. Troy*
                                                       Matthew J. Troy
                                                       Attorney for the United States of America